IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HICKS individually, and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>MACY'S DEPARTMENT STORES, INC.,<br><br>   Defendant.        / | No. C 06-02345 CRB<br><br>**MEMORANDUM AND ORDER** |

   This wage and hour putative class action is brought on behalf of all non-exempt Macy's California employees. Defendant moves to compel arbitration on the ground that the named plaintiff, John Hicks, agreed to arbitrate all disputes arising out of his employment. The dispositive issue is whether Hicks agreed to arbitration by failing to "opt out" of the arbitration program on at least two occasions. After carefully considering the papers and evidence filed by the parties, and having had the benefit of oral argument, the Court GRANTS defendant's motion and dismisses the action.

**FACTUAL BACKGROUND**

**A. Macy's Notifies Plaintiff of the Arbitration Program**

   In 2003 Federated Department Stores, Inc. ("Macy's) implemented a dispute resolution program entitled Solutions InSTORE ("SIS"). SIS involves four steps. Steps 1 through 3 cover all employees and involve internal processes for informally resolving

disputes. Step 4 is arbitration and applies only if the employee agreed to be bound by arbitration; it is not a condition of the employee's continued employment.

Plaintiff was employed by Macy's at its Bakersfield store before Macy's implemented SIS. For two weeks in September 2003, Macy's Bakersfield held daily meetings for its employees about SIS. Macy's gave all employees two initial documents explaining SIS: a letter and a brochure. The brochure states that if "you decide you would like to be excluded from participating in and receiving the benefits of Step 4, we will ask you to tell us in writing by completing a form that will be mailed to all employees' homes this Fall." The brochure refers to Step 4 as binding arbitration. From Fall 2003 to the present Macy's has posted in employee areas posters diagraming each SIS step, including Step 4, binding arbitration. Macy's October 2004 handbook also discusses SIS.

In Fall 2003, Macy's sent all employees a packet which included the SIS Plan Document, an Early Dispute Resolution Program Election Form, and a pre-addressed postage-paid return envelope. The Form clearly states that the employee must return it by October 31, 2003 to opt out of arbitration. Plaintiff did not return the opt out form, although 10 percent of Macy's employees did so opt out.

In January 2004, Macy's mailed all employees who had not returned the opt out form a brochure entitled "You're In Good Company." The brochure acknowledges that the employee had accepted arbitration. In October 2004 Macy's mailed employees, such as plaintiff, who had not opted out of arbitration, another packet of information about SIS. The packet included a new election form enabling an employee to opt out of arbitration. A pre-addressed postage-paid return envelope was included with the packet. Once again, plaintiff did not return the election form opting out of Step 4, arbitration.

Plaintiff continued to work at Macy's until early 2006.

**B.  The Arbitration Plan**

The arbitration plan covers all employment-related disputes and provides for arbitration administered by the American Arbitration Association. It provides further that "[i]f a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the

2

1  court shall dismiss the lawsuit and require the claim to be resolved through the [SIS]
2  program." The Plan also prohibits the arbitration of class claims.

## DISCUSSION

Defendant moves to compel arbitration on the ground that plaintiff is bound by the arbitration agreement because he did not opt out, despite being given two opportunities to do so. Plaintiff does not dispute that he attended meetings discussing SIS; nor does he dispute that he received the SIS mailings, including the opt out forms; instead, he states that he "never communicated, either in writing or verbally, to any representative of Macy's that I wished to enter into an agreement to submit legal disputes between I and Macy's to binding arbitration. I did not, at any time, intend to enter into such an agreement with Macy's." Declaration of John Hicks ¶ 4. Plaintiff also argues that part of the agreement--a class action waiver--is unconscionable.

### A.   Plaintiff Agreed To Arbitration

The first issue, then, is whether plaintiff's failure to return the opt out form resulted in an enforceable agreement to arbitrate. Whether the parties entered into an enforceable arbitration agreement is governed by California law. Plaintiff's insistence that he did not agree to arbitrate because he did not sign an arbitration agreement is contrary to that law.

While "[a]s a general rule, silence or inaction does not constitute acceptance of an offer," "where circumstances . . . between the parties places the offeree under a duty to act or be bound, his silence or inactivity will constitute his assent." Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1109 (9th Cir. 2002); see also Craig v. Brown & Root, Inc., 84 Cal.App.4th 416, 420 (2000) (stating that an employee's acceptance of an arbitration agreement may be implied-in-fact); Varni Bros. Corp. v. Wine World, Inc., 35 Cal.App.4th 880, 888 (1995) ("An implied-in-fact contract is a mutual agreement shown by the acts and conduct of the parties, rather than by their spoken or written words").

In Njad, for example, the employer instituted a voluntary binding arbitration program to which the employee was bound unless he completed a form "opting out" of the program. The plaintiff never opted out. The Ninth Circuit held that the plaintiff had entered into a

3

binding agreement to arbitrate his claims because he had signed an acknowledgment form that clearly set forth the significance of his failure to opt out; the employer had clearly communicated in writing the affect of an employee's agreement to arbitrate; the employee had a reasonable amount of time--30 days--to decide whether to opt out; and it was apparent that the employee's employment would not be affected by a decision to opt out. The court held: "When, as here, inaction is indistinguishable from overt acceptance, we may conclude that the parties have come to agreement. Thus, the circumstances of this case permit us to infer that [the employee] assented to the [arbitration policy] by failing to exercise his right to opt out of the program." Id. at 1109.

The circumstances here similarly permit the Court to infer that plaintiff agreed to Macy's arbitration policy. Despite being given notice that he would be bound unless he opted out, plaintiff--twice--failed to return the opt out form. Plaintiff had a reasonable amount of time to decide whether to opt out; the documents mailed to him clearly set forth the consequences of his failure to opt out; and his employment would not be affected by his decision to opt out. The adequacy of Macy's notice is further demonstrated by the ten percent of employees who received the same material as plaintiff and did opt out. Accordingly, the Court finds that plaintiff impliedly agreed to arbitrate his employment-related claims. Plaintiff's assertion that he did not intend to enter into an arbitration agreement with Macy's is incredible in light of plaintiff's failure to explain why he did not return the opt out form.

Plaintiff's attempt to distinguish Najd is unavailing. The only difference between Najd and this case is that here plaintiff never signed a form acknowledging receipt of the SIS materials. Such a distinction is immaterial as plaintiff does not dispute defendant's evidence that he did in fact receive such materials; indeed, he does not even dispute that he read the materials. Nor does he dispute that he attended meetings at which the SIS program, and arbitration in particular, were discussed. Accordingly, the Court also finds that plaintiff attended meetings discussing the program and received and reviewed the SIS materials,

1  including the form specifically stating that he must return the election form to opt out of
2  arbitration.  <u>Najd</u> is thus squarely on point.
3       Plaintiff's reliance on the statute of frauds is equally unavailing.  <u>See</u> Cal. Civil Code
4  § 1624(a) (1) (invalidating "[a]n agreement that by its terms is not to be performed within a
5  year from the making thereof" unless the contract "or some note or memorandum thereof, [is]
6  in writing <u>and</u> subscribed by the party to be charged or by the party's agent") (emphasis
7  added).
8       First, "it is well-established that a party may be bound by an agreement to arbitrate
9  even absent a signature." <u>Genesco v. T. Kakiuchi Co.</u>, 815 F.2d 840, 846 (2nd Cir. 1987).
10 The Federal Arbitration Act and the California Arbitration Act require only a writing, they do
11 not also require that the writing be signed by the parties.  <u>See</u>  9 U.S.C. § 3 (requiring an
12 agreement in writing, not an agreement signed by all parties); Cal. Code Civ. P. § 1281
13 (same).
14      Second, the California courts and Ninth Circuit have upheld arbitration agreements
15 which were not signed by the employee. <u>See, e.g.</u>, <u>Craig</u>, 84 Cal.App.4th at 420; <u>Njad</u>, 294
16 F.3d at 1109.
17      Third, the California statute of frauds only prohibits enforcement of contracts that
18 cannot under any circumstances per performed within one year. <u>Foley v. Interactive Data
19 Corp.</u>, 47 Cal.3d 654, 671 (1988).   The statute of frauds does not apply to an employment
20 agreement of indefinite duration because the employment *could be* completed within one
21 year. <u>Id.</u>  The statute of frauds likewise does not apply to an arbitration agreement attached
22 to an employment agreement of indefinite duration.
23 **B.    Validity of the Agreement**
24      On a motion to compel arbitration the plaintiff usually argues that the Court should
25 not enforce the arbitration agreement because it is "unconscionable."  Plaintiff does not make
26 any such argument here.  Accordingly, the Court concludes that plaintiff must arbitrate all of
27 his claims arising out of his employment with defendant.
28 //

5

**C. The Waiver on Class Actions**

The arbitration policy provides, among things:

> The Arbitrator shall not consolidate claims of different Associates into one (1) proceeding, nor shall the Arbitrator have the power to hear an arbitration as a class action (a class action involves representative members of a large group, who claim to share a common interest, seeking relief on behalf of the group).

In accordance with the above provision, defendant asks that you strike plaintiff's class action allegations and order that he arbitrate his claims individually. Plaintiff responds that the waiver is unconscionable and therefore that specific provision cannot be enforced.

Under California law a provision of an arbitration agreement "is unenforceable if it is both procedurally and substantively unconscionable." Circuit City, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002).

**1. Procedural unconscionability**

An arbitration agreement is procedurally unconscionable if it is a contract of adhesion; that is, it springs "from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." Circuit City v. Mantor, 335 F.3d 1101, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). Another factor demonstrating procedural unconscionability is surprise: "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed from drafted by the party seeking to enforce the disputed terms"). Id. (internal quotation marks and citation omitted).

Arbitration agreements are not procedurally unconscionable if the employer provided the employee with a meaningful opportunity to opt out. See Najd, 294 F.3d at 1108; Circuit City Stores, Inc. v. Ahmed, 283 F.3d 1198, 1200 (9th Cir. 2002); see also Ingle v. Circuit City Stores, 328 F.3d 1165, 1172 (9th Cir. 2003) (finding arbitration agreement procedurally unconscionable because, unlike the agreements in Najd and Ahmed, the employee was not given a meaningful opportunity to opt out).

Plaintiff was indisputably given a meaningful opportunity to opt out; indeed, defendant gave him two separate opportunities. Accordingly, under Najd and Ahmed, the agreement, including the class action waiver, is not procedurally unconscionable; plaintiff
6

did not have to agree. The agreement was also not the result of surprise: defendant gave plaintiff sufficient of notice of the SIS program and its terms.

Defendant has attached to its Request for Judicial Notice various California Superior Court decisions reviewing the same arbitration agreement at issue here and holding that the class action waiver is valid. These courts, too, reason that because employees could opt out, the agreement (including the waiver) is not procedurally unconscionable.

Plaintiff correctly notes that these courts relied on the decision in Gentry v. Superior Court, 135 Cal.App.4th 944 (2006), and that the California Supreme Court has granted review of Gentry. Whatever the significance of the California Supreme Court's decision to review, the law of the Ninth Circuit as set forth in Ahmed and Najd is that an arbitration agreement is not procedurally unconscionable if the employee has a meaningful opportunity to opt out. This Court is bound by those decisions. Accordingly, the Court declines to find the class action waiver unconscionable.

### 2. Substantive unconscionability

Because the class action waiver is not procedurally unconscionable, the Court need not and will not address substantive unconscionablity. See Najd, 294 F.3d at 1109; Ahmed, 283 F.3d at 1200.

### CONCLUSION

The Court finds that plaintiff agreed to abide by defendant's arbitration procedure. The Court also finds that the class action waiver in arbitration agreement is not unconscionable and therefore strikes the class action allegations in the complaint before the Court. As all of plaintiff's remaining claims are subject to mandatory arbitration, and as the arbitration agreement provides that "[i]f a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through the [SIS] program," defendant's motion to compel is GRANTED and plaintiff's complaint is DISMISSED. See Sparling v. Hoffman Const. Co., 864 F.2d 635,

//

//

1  638 (9th Cir. 1988).

2  **IT IS SO ORDERED.**

4  Dated: September 11, 2006

          CHARLES R. BREYER
          UNITED STATES DISTRICT JUDGE